IN THE DISTRICT COURT OF WAGONER COUNTY STATE OF OKLAHOMA

WAGONER COUNTY, OKLA
FILED
IN DISTRICT COURT
2020 JUN 25 AM 11: 05
WAGONER COUNTY
JAMES E. HIGHT
COURT CLERK

| | |
|---|---|
| WILLIAM ROY FLOWERS ) | |
| and ) | |
| SHELLY BURRIS ) | |
| Plaintiffs, ) | |
| v. ) | CJ-2020-159 |
| BOARD OF COUNTY COMMISSIONERS ) | |
| OF THE COUNTY OF WAGONER; a political ) | |
| subdivision and municipal corporation; ) | |
| CHRIS ELLIOT, in his official capacity; ) | |
| CHAD LEWIS EIDEN, individually; ) | |
| JOHN DENTON, individually; and ) | |
| DEBORAH ANN DOCHERY, individually, ) | |
| Defendants ) | |

## PETITION

The Plaintiffs hereby submit their petition in the above matter. In support thereof, Plaintiffs allege and state as follows:

1. Plaintiffs reside in Wagoner County Oklahoma, and the events at issue occurred in Wagoner County, Oklahoma.

2. The property at issue is located at 72119 S. 321 Rd Wagoner, Oklahoma (Property).

3. Defendant Chris Elliot (Elliot) is currently the Wagoner County Sheriff and was employed

1

**EXHIBIT 2**

as the Wagoner County Sheriff at all material times herein. Under 19 O.S. § 161, Elliot is a "County Officer." Under 19 O.S. § 4, the Board of County Commissioners of the County of Wagoner (Board) is the governing body for Wagoner County public officials and is the proper party to be sued for claims against County officials not within the purview of 19 O.S. § 161. The Board is named for the conduct of the Defendants amounting to an unconstitutional policy as specified below. To the extent applicable law precludes naming the Board as a party then such claims exist as to the individual Defendants in their official capacity.

4. Chad Lewis Eiden (Eiden) is an individual who is the purported owner of the property at issue herein.

5. Deborah Ann Dochery (Dochery) is an individual who resides in California and received the property at issue herein after the death of her husband Jerry Reynolds (Reynolds).

6. Williams Flowers (Flowers) and Shelly Burris (Burris) resided together at the property and were engaged in a dating relationship.

7. In September 2019 Flowers reached an agreement with Reynold regarding the property. Reynolds was the owner of the property. Flowers worked on a trailer on the property and the house that Reynolds lived in on the same property. As part of the agreement, Flowers resided at the trailer on the property.

8. That Reynolds passed away on January 11, 2020.

9. After Reynolds passed away, Flowers continued to work on the property pursuant to the agreement.

10. Without notice to Plaintiffs, the property allegedly was transferred to Dochery and sold to Eiden. Specifically, on May 11, 2020, Dochery executed an "Affidavit of Surviving Joint

Tenant" and on May 26, 2020 a quit claim deed for the property was executed between Dochery and Eiden.

11. That Plaintiffs are tenants under the "Oklahoma Residential Landlord and Tenant Act," 41 O.S. § 101, *et. seq.*, (ORLTA). Under the ORLTA "Tenant" means any person entitled under a rental agreement to occupy a dwelling unit. 41 O.S. § 102(15). A rental agreement can be oral or written. 41 O.S. § 103.

12. Dochery and Eiden are landlords under the ORTLA because landlord "means the owner, lessor or sublessor of the dwelling unit or the building of which it is a part, manufactured or mobile home site, space or lot, and it also means a manager of the premises who fails to comply with the disclosure provisions of Section 116 of this title" 41 O.S. § 102(5).

13. Under the ORLTA, "[a]lienees of landlords and tenants shall have the same legal rights, obligations and remedies as their principals. 41 O.S. § 114.

14. That the ORTLA provides that:

> unless otherwise agreed and except as otherwise provided in this act, upon termination of the owner's interest in the dwelling unit including, but not limited to, terminations of interest by sale, assignment, death, bankruptcy, appointment of a receiver or otherwise, the owner is relieved of all liability under the rental agreement and of all obligations under this act as to events occurring subsequent to written notice to the resident of the termination of the owner's interest. The successor in interest to the owner shall be liable for all obligations under the rental agreement or under this act. Upon receipt by a resident of written notice of the termination of the owner's interest in the dwelling unit, a resident shall pay all future rental payments, when due, to the successor in interest to the owner.

41 O.S. § 119C.

15. That under the ORTLA,

> if a landlord wrongfully removes or excludes a tenant from possession of a dwelling unit the tenant may recover possession by a proceeding brought in a court of competent jurisdiction, or terminate the rental agreement after giving notice of such intention to the landlord, and in either case recover an amount not more than twice the average monthly rental, or twice his actual damages, whichever is greater. If the rental agreement is

3

terminated, the landlord shall return all deposits recoverable under Section 15 of this act and all prepaid and unearned rent.

41 O.S. § 123.

16. That under the ORTLA

A. If the landlord makes an unlawful entry or a lawful entry in an unreasonable manner or harasses the tenant by making repeated unreasonable demands for entry, the tenant may obtain injunctive relief to prevent the recurrence of the conduct or, upon written notice, terminate the rental agreement. In either case the tenant may recover actual damages.

B. Neither injunctive relief nor damages shall be available to a tenant if the basis for the landlord's action is the landlord's execution of a writ in the manner prescribed by Section 1148.10A of Title 12 of the Oklahoma Statutes.

41 O.S. § 124.

17. Denton was employed with WCSO and the Board at all material times herein.

18. According to land records, on May 11, 2020 an affidavit of surviving joint tenancy was executed by Docherty for the subject property and on May 26, 2020 a quit claim deed was executed between Docherty and Eiden for the subject property.

19. On June 1, of 2020, Eiden allegedly contacted the Wagoner County Sheriff's Office (WCSO) with assistance to evict Plaintiffs. WCSO claims that it posted notice to the property on June 1, 2020. However, no notice was provided. In any event, the notice allegedly provided was shown to Flowers by Denton on June 7, 2020 and on its face was merely a five-day notice under the forcible entry and detainer act and was not a court order. This alleged five-day notice was unlawful in violation of federal moratorium on evictions as well as related requirements under Oklahoma law.

20. On Saturday June 6, 2020, Flowers came home from work and discovered that the locks were changed on his property to the trailer. Flowers cut the lock and went into the trailer. Plaintiffs dog was missing and had been removed.. About five minutes later Eiden arrived and

asserted that the property was his to which Flowers disputed. Eiden agreed to give Flowers a week to move and explore his legal options.

21. The next day, Plaintiffs had a friend speak with Eiden the to inquire as to the legal rights of Eiden to evict Plaintiffs. In retaliation, Eiden immediately called the WCSO and Denton was dispatched to the residence.

22. Eiden went to the residence and went in house and Eiden assaulted and battered Burris by placing his hands on her.

23. The WCSO arrived at the residence and ordered Plaintiffs off the property and issued a trespass warning and ordered Plaintiffs to leave the residence or be arrested.

24. Denton arrived and ordered Plaintiffs to leave.

25. Denton was employed with the WCSO and was acting under the color of law.

26. WCSO is a political subdivision and municipal corporation located in Wagoner County, Oklahoma.

27. That municipal and official liability exists based on an unconstitutional custom or policy which caused the unconstitutional deprivation. This includes the failure of the Board and Elliot to train the employees of the requirement of a writ of assistance or court order to evict an individual. Further, this includes the failure to require a court order when engaging in a lockout. A lockout is a procedure whereby, in this case, WCSO, changes the lock on a residence and secures the residence from one individual to another. WCSO performed a lockout in this case, without a court order or any process. Moreover, the Board and Elliot failed to train employees and agents regarding compliance with applicable law regarding

5

evictions and tenants' rights. This includes laws specifically relating to COVID-19. As a result of the COVID-19 pandemic, Congress has passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act (P.L. 116-136). Section 4024 of the CARES Act provides a temporary moratorium on eviction filings as well as other protections for tenants in certain rental properties with federal assistance or federally related financing. These protections are designed to alleviate the economic and public health consequences of tenant displacement during the COVID-19 outbreak. They supplement temporary eviction moratoria implemented in states and cities by governors and local officials using emergency powers. Under no reasonable or rational interpretation can the CARES Act be read to mean that eviction procedures can simply be skipped.

28.     CARES Act Section 4024(b) prohibits landlords of certain rental "covered dwellings" from initiating eviction proceedings or "charg[ing] fees, penalties, or other charges" against a tenant for the nonpayment of rent. These protections extend for 120 days from enactment (March 27, 2020) a freeze on evictions. Section 4024(c) requires landlords of the same properties to provide tenants at least 30 days-notice before they must vacate the property. It also bars those landlords from issuing a notice to vacate during the 120- day periods, Section 4024(c) prohibits landlords from being able to force a tenant to vacate a covered dwelling for nonpayment or any other reason until after August 24, 2020 (i.e., 120 days after enactment, plus 30 days after notice is provided).

That pursuant to the CARES act, the Oklahoma Supreme court issued an "ORDER REGARDING THE CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT."

*See* 2020 OK 22. The Oklahoma Supreme Court ordered:

A. In support of a Petition for Forcible Entry and Detainer or Affidavit for Possession filed on or after March 27, 2020, the date of passage of the CARES Act, the Plaintiff in any action for eviction shall affirmatively plead that the property that is the subject of the eviction dispute **is or is not a covered dwelling under the CARES Act.**

B. This requirement shall be met by the filing of the attached VERIFICATION OF COMPLIANCE WITH SECTION 4024 OF THE CARES ACT. The Plaintiff shall supplement all pending cases where the Petition or Affidavit for Possession was not filed with a Verification of Compliance with Section 4024 of the CARES Act. All new filings must comply with this order until further order of this Court.

3. This temporary pleading requirement merely reflects the Act's moratorium prohibiting the lessor of a covered dwelling from filing a legal action to recover possession of the property for nonpayment of rent. *See* CARES Act Section 4024(b). This requirement shall remain in force and effect until further order of this Court.

*Id.* ¶ 2.

29. That the Oklahoma Supreme Court order requires compliance with the CARES ACT in all evictions in that a verification must be attached stating whether it applies or not. Further, the Wagoner County Court was limited availability because of the COVID-19 pandemic and resulting orders and notices. That the court closures and CARES ACT were designed to provide more protection to tenants and individuals residents of dwellings and in no way designed to provide less protection or to excuse legal requirements. Due process was not suspended. Denton, Board, Elliot and Eiden ignored all legal requirements imposed. Moreover, the eviction of Plaintiffs failed to conform with Oklahoma law and process as well.

30. That Wagoner County cronyism prevailed over due process or any legal requirements. This includes Eiden's preexisting relationship with WCSO and Elliot. Specifically, Eiden is a

Deputy Fire Chief for the Toppers[1], Oklahoma Fire Department. Moreover, he is a member of the Wagoner County Fire Trust Authority. Based on his relationship with Wagoner County, WCSO provided special treatment to Eiden. Eiden, Denton, WCSO burglarized Plaintiffs residence by entering the trailer unlawfully and allowing Eiden to change the locks.

31. Plaintiffs were seized, and their property seized by Denton, Elliot and BCCCW. The seizure was objectively unreasonable and contravenes Plaintiff's rights guaranteed by the Fourth Amendment of the United States Constitution.

32. Additionally, and/or alternatively, Plaintiffs were denied their rights to procedural due process by Denton, Elliot and BCCCW under the 14th Amendment of the U.S. Constitution.

33. That Defendants Denton, Elliot and Board violated plaintiffs' constitutional rights and as such as their rights should be vindicated pursuant to 42 U.S.C.§ 1983.

34. Additionally, and or/alternatively, Denton, and Eiden converted Plaintiffs' property by taking Plaintiffs' property and dispossessing Plaintiff of their property without legal justification.

35. Additionally, and or/alternatively, Eiden assaulted and battered Burris when he placed his hands on her against her will, without consent or legal justification.

36. Additionally, and/or alternatively, Eiden used and abused the legal process for an improper and ulterior motive and as such engaged in abuse of process.

37. Additionally, and or/alternatively, Eiden and Dochery wrongfully evicted and excluded Plaintiffs without proper notice or procedures in violation of the ORTLA.

38. Additionally, and or alternatively, Flowers performed services and labor on the property

---

[1] Toppers is an unincorporated community in Wagoner County, Oklahoma. *See* https://www.ok.gov/wagonercounty/About_Wagoner_County/Cities_and_Towns/index.html

to which he is entitled to be reimbursed for the fair value under *quantum meruit*. Further, Dochery and Eiden have been unjustly enriched as a result of the labor of Flowers.

39.     Additionally, and/or alternatively, injunctive and declaratory relief should issue under 42 U.S.C. § 1983, and Oklahoma law declaring the eviction of Plaintiffs to be unlawful, restoring possession of the property to Plaintiffs' vacating and holding for naught the property transfers at issue herein.

## CONCLUSION

Plaintiffs request and award of actual damages in excess of $10,000.00, an award of punitive damages against the individual Defendants, an award of attorney fees, court costs, injunctive relief and any other and further relief this court deems proper.

Respectfully submitted,

_____
Brendan M. McHugh, OBA #18422
Attorney for Plaintiffs
P.O. Box 1392
Claremore, OK 74018
(918) (918) 608-0111
Fax 918-803-4910

**JURY TRIAL**

**DEMANDED**